Margaret **KELLY**, CPA, State Auditor of Missouri, Appellant,

v.

Richard **HANSON**, Commissioner of Administration, et al., Respondents.

No. 80251.

Supreme Court of Missouri, En Banc.

Dec. 23, 1997.

As Modified on Denial of Rehearing Jan. 27, 1998.

Marc H. Ellinger, Keith A. Thornburg, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Chief Deputy Atty. Gen., Robert L. Presson, Paul Wilson, Asst. Attys. Gen., Jefferson City, for Respondents.

LIMBAUGH, Judge.

This appeal arises from the dismissal of an action for declaratory judgment filed by Margaret Kelly, CPA, State Auditor ("Auditor"), concerning the duties and authority of her office in relation to the "Hancock Amendment." Because of the general interest and importance of the issues presented, this Court granted transfer of this appeal prior to the issuance of an opinion by the Court of Appeals. Mo. Const. art. V, sec. 10; Rule 83.06. This Court holds that the trial court improperly dismissed the Auditor's claims regarding the propriety of her system of accounting for lack of standing, but was correct in its conditional ruling on the merits of the case that the Auditor's accounting methods did not comply with the requirements of the Hancock Amendment. The judgment of the trial court is reversed in part and affirmed in part.

## I.

On December 20, 1995, the Auditor filed a petition for declaratory judgment in the Cole County Circuit Court, seeking a declaration that she has authority to devise a system for calculating total state revenues ("TSR") and the revenue limit under the Hancock Amendment, and that the system she devised complies with Hancock Amendment requirements. Respondents, the Commissioner of Administration and the Director of Budget and Planning for the State of Missouri, filed a motion to dismiss on the grounds that the Auditor lacked standing to bring her claim. Although the circuit court initially granted this motion, the Court of Appeals, Western District, reversed and remanded, holding that the Auditor did have standing to seek a declaration regarding the extent of her constitutional duties. *Kelly v. Hanson*, 931 S.W.2d 816 (Mo.App.1996). On remand, the circuit court determined that the Auditor had a constitutional duty under article IV, section 13 to establish a system of accounting, and that this duty encompassed an obligation to calculate the amounts included in TSR and the revenue limit in order to allow compliance with the Hancock Amendment. However, the circuit court also held that the Auditor did not have standing to seek specific declarations regarding the propriety of the accounting methods used for her calculations. The Auditor now appeals from the circuit court's judgment to the extent that it denies her request for a review of those accounting methods.

In addressing the Auditor's request for a declaratory judgment, it is necessary to begin with a general description of the Hancock Amendment refund process. In simple terms, the Hancock Amendment establishes a formula for calculating a revenue limit, and

requires a refund to taxpayers if the state collects revenues in any given year that exceed that revenue limit by more than one percent. *See* Mo. Const. art. X, sec. 18. Thus, as the circuit court recognized, the formula derived from the Hancock Amendment can generally be stated as follows: TSR *minus* the revenue limit *equals* the taxpayer refund. Obviously, in order to determine the necessity of a refund and the amount of the refund, one must first determine the amounts included in TSR and the revenue limit. The determination of these amounts is essentially the issue that the Auditor seeks to litigate.

## II.

The standing requirements for bringing a declaratory judgment action are well-settled. "When seeking declaratory ... relief, the criterion for standing is whether the plaintiff has a legally protectable interest at stake." *Battlefield Fire Protection Dist. v. City of Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997). A plaintiff must state facts that establish "present legal rights against [the] defendants with respect to which [plaintiff] may be entitled to some consequential relief immediate or prospective." *State ex rel. Chilcutt v. Thatch*, 359 Mo. 122, 221 S.W.2d 172, 176 (1949). To determine whether the Auditor has a "legally protectable interest" that would entitle her to "some consequential relief immediate or prospective" against Respondents, it is necessary to review the duties and authority of her office in relation to the Hancock Amendment.

Under article IV, section 13, of the Missouri Constitution, the Auditor has a duty to "establish appropriate systems of accounting for all public officials of the state." Although this provision seems clear enough, it does not directly address the Auditor's duty to devise a system for calculating TSR or the revenue limit. Section 29.180,[1] however, further clarifies the Auditor's duty by indicating that the accounting systems established by the Auditor "shall conform to recognized principles of governmental accounting." The parties to this action have stipulated that the applicable recognized principles of governmental accounting are set out in the *Codification of Governmental Accounting and Financial Reporting Standards* (June 30, 1996) ("*GASB*"), which states in pertinent part:

> A governmental accounting system must make it possible both: (a) to present fairly and with full disclosure the financial position and results of financial operations of the funds and account groups of the governmental unit in conformity with generally accepted accounting principles, and (b) to determine and demonstrate compliance with finance-related legal and contractual provisions.

*GASB*, pg. 9, sec. 1200. The Auditor contends that the Hancock Amendment is a "finance-related legal ... provision" within the meaning of *GASB*. Based on this contention, the Auditor claims that her duty to establish an appropriate accounting system includes an obligation to devise a system for calculating TSR and the revenue limit in order to "make it possible" to "determine and demonstrate compliance" with the Hancock Amendment. We agree. The provisions of article IV, section 13, when clarified by section 29.180 and the pertinent accounting standards, show conclusively that the Auditor's duties do include devising an appropriate system for calculating TSR and the revenue limit. The appropriateness of that system is determined by its compliance with the special terms of the Hancock Amendment and with the terms "TSR" and "revenue limit" in particular.

Respondents contend that the Auditor's constitutional duty extends only to establishing an accounting system, and does not allow her to enforce that system. But, to interpret the Auditor's constitutional duties in this limited fashion would undermine the very purpose of article IV, section 13, which is obviously to obtain uniformity in state accounting procedures. If the Auditor merely has the power to establish an accounting system that the rest of state government is free to ignore, then no gain in uniformity is achieved. Implicit in the Auditor's duty to establish an accounting system for state officials is the ability to enforce that system once it is established. Because the Auditor has a constitutional duty to devise a system for calculating TSR and the revenue limit, that system is enforceable against other state officials.

For purposes of standing, the Auditor's legal right to enforce her system for

1. All statutory references are to RSMo 1994 unless otherwise indicated.

calculating TSR and the revenue limit against Respondents is a legally protectable interest that would entitle her to relief against those Respondents. Having shown a legally protectable interest, the Auditor has met the requirements for standing. *See State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992) (*Jones* involved an action for mandamus rather than an action for declaratory judgment. Nevertheless, this Court held that a circuit court judge's constitutional responsibility for the administration of the circuit court provided him with standing to litigate disputes regarding the scope of that constitutional responsibility).

### III.

■ To determine the merits of the Auditor's request for declaratory judgment, this Court must identify the appropriate test for determining what is and what is not included in TSR. The Auditor claims that article X, section 18(a) of the Missouri Constitution—which states that "... the general assembly shall not impose taxes of any kind which, together with all other revenues of the state, federal funds excluded, exceed the revenue limit established in this section"—requires taxes to be treated separately from and in addition to all other types of revenue in calculating TSR. However, the Hancock Amendment specifically defines TSR, and this Court's decision must be confined to the proper interpretation of that definition. That definition provides:

(1) **"Total state revenues"** includes all general and special revenues, license and fees, excluding federal funds, as defined in the budget message of the governor for fiscal year 1980–1981. Total state revenues shall exclude the amount of any credits based on actual tax liabilities or the imputed tax components of rental payments, but shall include the amount of any credits not related to actual tax liabilities.

Mo. Const. art X, sec. 17(1). In *Buechner v. Bond*, 650 S.W.2d 611 (Mo. banc 1983), this Court, recognizing that the term "revenue" as used in the definition of TSR was not itself defined in the Hancock Amendment, adopted the plain meaning of that term as found in the dictionary:

"Revenue" is defined as "the annual or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation, state, or municipality collects and receives into the treasury for public use...." Webster's Third New International Dictionary 1942 (1964).

*Id.* at 613. As we have held this day in *Missourians for Tax Justice Education Project v. Holden*, 959 S.W.2d 100 (Mo. banc 1997), this definition of revenue "is a cash basis accounting definition because it requires actual receipt of the revenue by the state." *Missourians for Tax Justice Education Project*, at 106. "Moneys not paid into the treasury, see Mo. Const. art. IV, sec. 15 (defining nonstate funds), or not received in the fiscal year in question are not part of [revenue]." *Id.* Furthermore, because revenue consists of funds that are available "for public use," funds that are not subject to appropriation—either by the General Assembly or by operation of law—will not be considered revenue. *Buechner*, 650 S.W.2d at 613. Thus, funds may not be considered *revenue* in the context of TSR unless they meet the two-part test derived from the definition of revenue adopted in *Buechner*: (1) the funds must be received into the state treasury, and (2) the funds must be subject to appropriation.

The Hancock Amendment's definition of TSR refers not only to revenue, but also refers to "license[s] and fees," terms that the *Buechner* decision did not directly address. Nonetheless, these terms are properly included in the definition of revenue adopted by *Buechner*. The phrase "general and special revenues, license and fees," in the definition of TSR, indicates an overall purpose of including any type of revenue that the state might take in, consistent with the Hancock Amendment's objective of reining in increases in government revenue. *See Roberts v. McNary*, 636 S.W.2d 332, 335 (Mo. banc 1982) (addressing a similar phrase in Mo. Const. art. X, sec. 22(a)). Indeed, licenses and fees would generally be included within the categories of general or special revenues, and the only apparent purpose in stating these terms separately is to emphasize the predominantly inclusive nature of TSR. Thus, we hold that the definition of *revenue* that was adopted in *Buechner* is equally applicable to all types of revenue: general reve-

nue, special revenue, licenses or fees. With this holding in mind, this Court must now address the Auditor's specific claims in light of the two-part test that is implicit in the definition of revenue.

**A. Reimbursement Allowances.**

■ The Federal Reimbursement Allowance ("FRA") and the Nursing Facility Reimbursement Allowance ("NFRA") are state licensing taxes related to federal Medicaid reimbursement programs. They are levied under sections 208.453, et seq., and 198.401, et seq., respectively, on hospitals and nursing homes for the privilege of engaging in business in Missouri. The vast majority of taxes payable under the FRA and NFRA are offset by Missouri Medicaid payments due the taxpayers and are never deposited into the state treasury. Thus, those offset amounts do not constitute revenue and should not be included in TSR.

**B. Local Use Tax.**

■ ▪Under section 144.748, RSMo, enacted in 1991, a local use tax was imposed by the state for the benefit of towns, cities and counties, and the taxes collected by the state were remitted to those local entities. In 1996, however, the Court declared section 144.748 unconstitutional. *Associated Industries of Missouri v. Director of Revenue*, 918 S.W.2d 780 (Mo. banc 1996). During the years that the local use taxes were collected, they were neither deposited in the state treasury nor subject to appropriation by the General Assembly. Therefore, these amounts did not constitute state revenue and should not be included in TSR.

**C. Local Portion of Gaming Admission Fees.**

■ On November 3, 1992, Missouri voters approved, by referendum, H.B. 149 "relating to certain gaming activities." Section 9 of H.B. 149 authorized the Tourism Commission to assess an admission fee of up to $1.00 per passenger on riverboat casinos to be paid into the general revenue. In 1993, the General Assembly enacted S.B. 10 & 11, which established a new regulatory scheme for riverboat gaming in Missouri and explicitly repealed H.B. 149, section 9. The new scheme established by S.B. 10 & 11 allowed the Missouri Gaming Commission to impose a $2.00 admission fee to be collected by the state for each riverboat casino passenger. One dollar of this admission fee was to be remitted to the "home dock city or county," and the other dollar was to be deposited in the state treasury to the credit of the Gaming Commission Fund. Secs. 313.820 and 313.835.

■ The Auditor claims that the entire admission fee should be included in TSR while Respondents claim that none of the admission fee should be included. The circuit court correctly found that the half of the admission fees that were paid to the "home dock city or county" were not included in TSR because they never entered the state treasury. Those fees were not revenue for purposes of TSR. Respondent's contention that the trial court erred by including the other one-half of the fees is based on the theory that S.B. 10 & 11 is a continuation of H.B. 149, the original voter approved admission fee, and that voter approved fees are excluded from TSR under article X, section 16. We need not address this contention because Respondents brought no cross-appeal, perhaps due to the mistaken belief that a cross-appeal was not required because this part of the circuit court's judgment was conditional. As this Court has recognized, however, conditional rulings constitute valid judgments, *Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A.*, 803 S.W.2d 23, 37 (Mo. banc 1991) (reversing an alternative judgment), *Noll v. Shelter Ins. Co.*, 774 S.W.2d 147, 149 (Mo. banc 1989) (discussing with approval the use of conditional rulings), and, as such, must be appealed in the same manner as all judgments.

**D. Local Portion of Adjusted Gross Receipts Tax on Gaming Receipts.**

■ Section 313.822 imposes an adjusted gross receipts tax on gaming operations. Although the tax is collected by the state, under the statute, 10% of the tax is locally allocated to the "home dock city or county." Because this 10% is never deposited in the state treasury, it is not included in TSR.

**IV.**

■ The Auditor's final point involves the amount included in the revenue limit rather than the amount included in TSR. In 1976, article V of the Missouri Constitution was substantially revised by what is popularly known as the Judicial Article Amendment. Amendment 6, Mo. Laws (adopted August 3, 1976). To implement the Judicial Article Amendment, the General Assembly enacted,

*inter alia,* section 483.245, RSMo 1978, which transferred responsibility for the salaries of deputy circuit clerks and division clerks from the counties to the state. This new section became effective July 1, 1981. Respondents claim that an upward adjustment should be made to the revenue limit to reflect this transfer of financial responsibility to the state.

The Hancock Amendment makes the following provision for adjustment to the revenue limit:

> If responsibility for funding a program or programs is transferred from one level of government to another, as a consequence of constitutional amendment, the state revenue and spending limits may be adjusted to accommodate such change, provided that the total revenue authorized for collection by both state and local governments does not exceed that amount which would have been authorized without such change.

Mo.Const. art X, sec. 18(d). The Auditor claims that the adjustment provision under this section is inapplicable for two reasons. First, she claims that the transfer is required by statute, not by a constitutional provision, and thus is not required "as a consequence of constitutional amendment." Second, she claims that article X, section 18(d) does not apply to legislation passed in years prior to the adoption of the amendment.

The Auditor's first claim misconstrues the provision of the Hancock Amendment that allows an adjustment to the revenue limit if there is a shift in responsibility "as a *consequence* of constitutional amendment." Mo. Const. art X, sec. 18(d) (emphasis added). This section does not require that a shift actually be stated in the constitutional amendment, but merely requires that it be a consequence of the constitutional amendment. Thus, a statute may serve as a basis for adjusting the revenue limit.

The Auditor's second claim is contrary to the very spirit of the Hancock Amendment. Article X, section 18(a) indicates that the intention of the Hancock Amendment was to establish the state's obligations in fiscal year 1980–1981 as the base for the revenue limit. Although section 483.245 was passed before that time, the actual transfer of responsibility required by that section occurred in fiscal year 1981–1982. The purpose of the exception in article X, section 18(d) is to avoid punishing the state when, as the result of a constitutional amendment, the state assumes obligations that it did not have at the time the Hancock Amendment was adopted. Because the state did not actually assume responsibility for these salaries until after the Hancock Amendment was adopted, the provision of article X, section 18(d) is applicable and an adjustment to the revenue limit is appropriate.

## V.

For the foregoing reasons, this Court holds 1) that the Auditor has standing to seek a declaratory judgment concerning the propriety of the accounting system she would impose for calculation of TSR and the revenue limit under the Hancock Amendment, 2) that the calculation of general and special revenue, licenses and fees in TSR is limited to those funds deposited in the state treasury and available for legislative appropriation, and 3) that the calculation of the revenue limit includes additional funding responsibilities that were imposed by statute as a consequence of a constitutional amendment and that were actually applied after the adoption of the Hancock Amendment. The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

All concur.