967 S.W.2d 62 (1998)
COMMITTEE FOR EDUCATIONAL EQUALITY, et al., Appellants,
Lee's Summit School District R-VII, et al., Plaintiffs,
v.
STATE of Missouri, et al., Respondents.
No. 79813.
Supreme Court of Missouri, En Banc.
April 21, 1998.
*63 Alex Bartlett, Jefferson City, for Appellants.
Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Presson, Asst. Aty. Gen., John Munich, Deputy Atty. Gen., Jefferson City, for Respondents.
Kenneth Brostron, St. Louis, Michael Delaney, Kansas City, John Gianoulakis, St. Louis, Shirley Keeler, Kansas City, Robert McClintock, St. Louis, for Plaintiffs.
WHITE, Judge.
Appellants argue that Missouri's public school finance system is unconstitutional because it does not allocate twenty-five percent of "state revenue" for the support of public schools.[1] The trial court ruled that certain receipts did not constitute state revenue for purposes of this section and, therefore, upheld the constitutionality of the current funding scheme. Because we find that funds received from the federal government are not "state revenue" within the meaning of article IX, section 3(b) of the state constitution, we affirm.

Background
Appellants ("the Committee") include a non-profit corporation representing eightynine school districts, the districts individually, and a number of students. The Committee originally filed suit in 1992 challenging the constitutionality of Missouri's educational funding system on a number of state constitutional grounds. The trial court found in favor of plaintiffs, reserving, however, the question of whether the level of funding violates article IX, section 3(b), which requires that: "in no case shall there be set apart less than twenty-five percent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools." On appeal, this Court held that the trial court ruling was not a final, appealable judgment and dismissed the appeal.[2] In the wake of the trial court's original ruling, the legislature enacted Senate Bill 380, which, the trial court held, and appellants agree, makes all the original claims in their lawsuit moot, except that dealing with the twenty-five percent funding floor. On that issue, the trial court held, based upon stipulated figures for the 1995 fiscal year, that the state had appropriated more than the required minimum amount, and entered judgment in favor of defendants. The Committee appealed, challenging the trial court's exclusion of three categories of receipts from its calculation of what constitutes "state revenue" for the purposes of article IX, section 3(b).[3]

Federal Receipts
By far the largest category of receipts excluded from state revenue by the trial court consists of funds received from the federal government. These amounted to almost $3.8 billion out of total state receipts of *64 $11.9 billion. The Committee, adopting a definition of "revenue" developed by this Court in the context of the Hancock Amendment[4]"the annual or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation, state or municipality collects and receives into the treasury for public use"[5]first argues that federal funds are revenue. In particular, appellants argue that that is the implication of article X, section 17(1): "`Total state revenues' includes all general and special revenues, license and fees, excluding federal funds...." The Committee argues that it would be unnecessary to exclude federal funds from this definition, unless they were a species of "general or special revenues." Even accepting, arguendo, the premise that this definition, which is explicitly limited to article X,[6] should be consulted to determine the meaning of a phrase used in article IX, this argument is unconvincing. While the section, arguably, supports the conclusion that federal funds are revenues, it undermines the Committee's position that federal funds are state revenues, since the definition explicitly excludes them from the calculation of "total state revenues."
The Committee's chief argument is that federal funds are properly included in "state revenue" because they must be deposited into the state treasury[7] and become, therefore, a part of the "revenue pie" available for appropriation by the legislature. This view finds some support in earlier cases, which often appear to equate "state revenue" with deposit into the treasury.[8] Later cases, however, undermined this simple identity, holding that moneys paid to the state treasury did not become a homogenous class of "state money."[9] The 1986 amendment to article IV, section 15 conclusively resolved this issue by explicitly constitutionalizing two of this Court's principal conclusions in Mallory. The 1986 amendment not only specifically requires that federal funds be deposited into the treasury ("All revenue collected and moneys received by the state which are state funds or funds received from the United States government shall go promptly into the state treasury"), but also makes clear that even once deposited into the treasury, such moneys retain their character as federal (as opposed to state) funds: "The investment and deposit of state, United States and nonstate funds shall be subject to such restrictions as may be prescribed by law."[10] The idea that the state is more like a custodian of federal funds than their owner is entirely consistent with the constitutional provision authorizing receipt of federal moneys: "Money or property may also be received from the United States and be redistributed together with public money of this state for any public purpose designated by the United States."[11] It is no longer the case, if, indeed, it ever was, that "state revenue" merely means all moneys deposited into the state treasury. Federal funds, which, when received into the treasury, do not become state funds and are held by the state subject to the dictates of *65 federal law, are not "state revenue" within the meaning of article IX, section 3(b).

Conclusion
The Committee also challenges the trial court's exclusion of two other types of receipts from its calculation of state revenue: unemployment compensation contributions and non-appropriated revenues of state universities. With the exclusion of federal funds, however, the propriety of these exclusions is a moot point, since, under the stipulated facts, the state will have expended more than twenty-five percent of state revenue for education whether or not these amounts are included in state revenue.[12]
The judgment is affirmed.
BENTON, C.J., PRICE, LIMBAUGH, COVINGTON and HOLSTEIN, JJ., concur.
ROBERTSON, J., concurs in separate opinion filed.
ROBERTSON, Judge, concurring.
The principal opinion concludes that that money sent from the federal government to Missouri state government to serve the federal government's purposes is not state revenue within the meaning of Article IX, section 3(b) of the state constitution. I agree. In concluding that federal funds are not state revenue, the principal opinion does not say what state revenue is. I write separately merely to propose a definition of state revenue that, it seems to me, necessarily forms the unspoken premise of the principal opinion.
Article IX, section 1(a), requires the general assembly to "establish and maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of twenty-one years as prescribed by law." To accomplish this purpose, the constitution insists that:
In event the public school fund provided and set apart by law for the support of free public schools, shall be insufficient to sustain free schools at least eight months in every year in each school district of the state, the general assembly may provide for such deficiency; but in no case shall there be set apart less than twenty-five percent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools.
Mo. Const. art. IX, sec. 3(b). (Emphasis added.)
This twenty-five-percent language is not a modern addition to the constitution. It appears in nearly identical form in the 1875 Constitution.
In case the Public School Fund now provided and set apart by law, for the support of free public schools, shall be insufficient to sustain a free school at least four months in every year in each school district of this State, the General Assembly may provide such deficiency ...; but in no case shall there be set apart less than twenty-five per cent. of the State revenue, exclusive of the Interest and Sinking Fund, to be applied annually to the support of the public schools.
Mo Const. art. XI, sec. 7 (1875).
If one is interested in original meaning, one need only recall that in 1875 no one imagined that the government of the federal republic would extend its tentacles so deeply into the affairs of the states. Nor could those drafting the state constitution in the 1870's dream that those tentacles would offer the states so much money or control it with so much regulatory ink. We can conclude that the drafters of the 1945 constitution had no different view of things when they copied the 1875 provisions into the constitution and, on this basis alone, decide that "state revenue" does not include federal funds.
*66 But we serve best when we offer a definition of state revenue, not a list of exclusions. To that end, this Court has recently reaffirmed its understanding of the word "revenue" as used in the constitution.
"Revenue" is defined as "the annual or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation, state, or municipality collects and receives into the treasury for public use...." Webster's Third New International Dictionary 1942 (1964).
Buechner v. Bond, 650 S.W.2d 611, 613 (Mo. banc 1983). (Emphasis added.) Quoted with approval in Missourians for Tax Justice Education Project v. Holden, 959 S.W.2d 100, 106 (Mo. banc 1997), and Kelly v. Hanson, 959 S.W.2d 107, 111 (Mo. banc 1997).
The phrase "other sources of income" tells us that all revenue is comprised of income. "Income" is "a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time, derives from capital, labor or a combination of both." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (1976). "Income" does not include gifts or moneys held in trust for the purposes of another.[1]See Mallory v. Barrera, 544 S.W.2d 556, 561 (Mo. banc 1976). (Federal educational funds are held in trust for the purpose specified by the federal government.) "State revenue" is income received by the state. For this reason, and as the principal opinion shows, federal funds are not "state revenue."
NOTES
[1] Mo. Const. art. IX, sec. 3(b).
[2] Committee for Educational Equality v. State, 878 S.W.2d 446 (Mo. banc 1994).
[3] The Committee also assigns error to the trial court's stated "belief" that the receipts and expenditures related to the Proposition C sales tax should be included in this calculation. The trial court explicitly noted that this was dicta, and excluded these moneys both from its calculation of state revenue and expenditures made in support of education. This point is denied.
[4] Mo. Const. art. X, secs. 16-24.
[5] Webster's Third New International Dictionary 1942 (1966); Missourians for Tax Justice v. Holden, 959 S.W.2d 100, 106 (Mo. banc 1997); Kelly v. Hanson, 959 S.W.2d 107, 111 (Mo. banc 1997).
[6] Mo. Const. art. X, sec. 17.
[7] Mo. Const. art. IV, sec. 15.
[8] See, e.g., State ex rel. McKinley Pub. Co. v. Hackmann, 314 Mo. 33, 282 S.W. 1007, 1011 (1926) ("money out of which the highway commission is to be maintained is as much public or state revenue as any money coming into the state treasury from any source"); State ex rel. Thompson v. Bd. of Regents, 305 Mo. 57, 264 S.W. 698, 700 (1924) ("no matter from what source derived, if required to be paid into the treasury, it becomes revenue, or state money").
[9] See, e.g., Mallory v. Barrera, 544 S.W.2d 556, 561 (Mo. banc 1976) (holding that certain federal educational funds must be paid into the treasury, but are held in trust for the uses specified by federal law, and suggesting that state funds and federal funds are subcategories of "public funds"); Bd. of Public Bldgs. v. Crowe, 363 S.W.2d 598, 607-08 (Mo. banc 1962) (recognizing that the treasury held certain funds in trust for the Board of Public Buildings, and that such funds need not be appropriated according to the spending priorities mandated in art. III, sec. 36).
[10] Mo. Const. art. IV, sec. 15.
[11] Mo. Const. art. III, sec. 38(a).
[12] The parties stipulated that total state receipts were $11,892,905,794. Subtracting stipulated interest and sinking fund expenses ($232,247,345), other stipulated deductions (refunds of $639,384,156 and interagency sales of $128,798,825) and federal funds (stipulated to amount to $3,797,488,737), state revenue under the stipulation can be no more than $7,094,986,731. Twenty-five percent of that amount is $1,773,746,683. The parties stipulated that state expenditures (exclusive of federal receipts and Proposition C tax receipts) in support of education were at least $1,791,505,188.
[1] Article XI, section 6 of the 1875 Constitution makes this point clearly.

The proceeds of all lands that have been or hereafter may be granted by the United States to this State, and not otherwise appropriated by this State or the United States; also, all moneys, stocks, bonds, lands and other property now belonging to any State fund for purposes of education; also, the net proceeds of all sales of lands and other property and effects that may accrue to the State by escheat, from unclaimed dividends and distributive share of the estates of deceased persons; also any proceeds of the sales of the public lands which may have been or hereafter may be paid over to this State (if Congress will consent to such appropriation); also, all other grants, gifts or devises that have been, or hereafter may be made to this State, and not otherwise appropriated by the State or the terms of the grant, gift or devise, shall be paid to the State Treasury, and securely invested and sacredly preserved as a Public School Fund; the annual income of which fund, together with so much of the ordinary revenue of the state as may be by law set apart for that purpose, shall be faithfully appropriated for establishing and maintaining the free public schools and the State University in this Article provided for, and for no other uses or purposes whatsoever.
(Emphasis added.)