MISSOURI ASSOCIATION
OF COUNTIES, et al.,
Appellants,

v.

Quentin WILSON, et al., Respondents.

No. 81375.

Supreme Court of Missouri,
En Banc.

Oct. 26, 1999.

Ivan L. Schraeder, St. Louis, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ronald Molteni, Asst. Atty. Gen., Peggy E. Gustafson, State Auditor's Office, Jefferson City, for respondents.

ANN K. COVINGTON, Judge.

The Missouri Association of Counties and several individual counties and cities (collectively, "MAC"), represent a class of Missouri counties and cities. At issue is the classification of state-imposed sales taxes on motor vehicles and trailers as specified in article IV, section 30(b).2 of the Missouri Constitution, as well as other funds derived from increases in state licensing fees and taxes on motor vehicles, trailers, motorcycles, mopeds, and motortricycles, collected pursuant to article IV, section 30(b).3 of the Missouri Constitution. (30(b).2 and (b).3 funds will be collectively referred to as "30(b) funds.") MAC brought suit against Quentin Wilson, director of the department of revenue, and others, alleging that 30(b) funds are not part of total state revenues and are therefore exempt from tax refunds mandated by article X, section 18 of the Missouri Constitution. The circuit court denied MAC's claims for declaratory and injunctive relief.

The judgment of the circuit court is affirmed.

This case concerns the treatment of 30(b) funds for fiscal years 1995, 1996, and 1997. The director of revenue collected 30(b) funds. The director transmitted them to the state treasurer, who deposited them into the motor fuel tax fund within the state treasury. The treasurer allocated the cities' portion of the funds directly from the motor fuel tax fund to the cities. The treasurer transferred the counties' portion into the county aid road trust fund, while the cities' portion remained in the motor fuel tax fund until distributions were made.

In fiscal years 1995, 1996, and 1997, the state's revenue exceeded the revenue limit for state government permitted under article X, section 18 of the Missouri Constitution. The limit and refund provisions of the Missouri Constitution, article X, sections 16–24, are commonly known as the Hancock Amendment. Hancock refunds were made pursuant to a general revenue fund appropriation, and the general assembly made additional appropriations to the general revenue fund of those portions of the Hancock refunds attributable to the various funds that are included in total state revenues.

In 1998, the director notified all affected counties and cities that the tax refunds based on revenue collected in 1995, 1996, and 1997 required a pro rata reimbursement from all state funds and, within each fund, each revenue source, including those derived from the 30(b) funds. MAC challenged the reimbursement on the grounds that 30(b) funds did not qualify as part of "total state revenue" for purposes of taxpayer refunds under article X, section 18 of the Missouri Constitution. The circuit court, after hearing argument based upon stipulated facts, rejected MAC's constitutional challenges and denied its request for declaratory and injunctive relief.

■ Only "total state revenues" are subject to Hancock Amendment refunds.

Mo. Const. Art. X, Sections 17–18. At issue in this case is whether 30(b) funds are part of total state revenues. Section 30(b).2 states:

One-half of the proceeds from the state sales tax on all motor vehicles, trailers, motorcycles, mopeds and motortricycles shall be dedicated for highway and transportation use and shall be distributed as follows: ten percent to the counties, fifteen percent to the cities, one percent to the state transportation fund, which is hereby created to be used in a manner provided by law and seventy-four percent to the state road fund. The amounts distributed shall be allocated as provided in section 30(a) of this article, to be used for highway and transportation purposes.

Similarly, section 30(b).3 provides:

Notwithstanding the provisions of subsection 1 of this section, any increase in state license fees and taxes on motor vehicles, trailers, motorcycles, mopeds and motortricycles over and above those in effect upon adoption of this section shall be distributed as follows: ten percent to the counties, fifteen percent to the cities and seventy-five to the state road fund. The amounts distributed shall be allocated as provided in section 30(a) of this article, to be used for highway and transportation purposes.

To qualify as total state revenues, "(1) the funds must be received into the state treasury, and (2) the funds must be subject to appropriation." *Kelly v. Hanson*, 959 S.W.2d 107, 111 (Mo. banc 1997).

■ The 30(b) funds qualified as total state revenues under the test of *Kelly v. Hanson*. First, pursuant to statutory authority, the funds were deposited into the state treasury. Section 136.110, RSMo

1994,[1] requires that "[t]he director of revenue shall promptly record all sums of money collected or received by him and *shall immediately thereafter deposit the same with the state treasurer.*" (emphasis added). Similarly, Section 33.080 provided in pertinent part:

All fees, funds and moneys from whatsoever source received by any department, board, bureau, commission, institution, official or agency of the state government by virtue of any law or rule or regulation made in accordance with any law, *shall,* by the official authorized to receive same, and at stated intervals of not more than thirty days, *be placed in the state treasury* to the credit of the particular purpose or fund for which collected . . . .

(emphasis added).[2] Depositing the state funds into the treasury is consistent with article III, section 36, which provides, "[a]ll revenue collected and money received by the state shall go into the treasury . . . ." 30(b) funds for the years 1995 through 1997, therefore, met the first prong of the *Kelly v. Hanson* test. *See Missourians for Tax Justice Educ. Project v. Holden*, 959 S.W.2d 100, 106 (Mo. banc 1997).

Second, the funds deposited into the state treasury by the director were subject to appropriation under authority of section 33.080, which provides that the funds collected by a state official and deposited into the state treasury "*shall be subject to appropriation* by the general assembly for the particular purpose or fund for which collected . . . ." (emphasis added). Both parts of the *Kelly v. Hanson* test, therefore, were satisfied. Section 30(b) funds for the fiscal years 1995 through 1997 were encompassed within total state revenues.

---

1. All references to statutes are to RSMo 1994 unless indicated otherwise.

2. Although the legislature recently amended section 33.080, H.B. 516 (1999), "excluding all funds received and dispersed by the state on behalf of counties, cities, towns and villages," from the requirement of depositing all

funds into the state treasury, substantive amendments do not apply retrospectively and MAC does not point to any legislative intent to support retrospective application. *See Pipe Fabricators, Inc. v. Director of Revenue*, 654 S.W.2d 74, 77 (Mo. banc 1983).

■ MAC concedes that 30(b) funds are subject to appropriation, assuming the funds were properly deposited into the state treasury. MAC disputes, however, the propriety of the director of revenue's depositing the funds in the state treasury. MAC invokes article IV, section 15 of the Missouri Constitution, which requires the director himself to "take custody of and invest nonstate funds as defined herein, and other moneys authorized to be held by the department of revenue." The term "nonstate funds" in section 15 includes three categories:

■ all taxes and fees imposed by political subdivisions and collected by the department of revenue; [2] all taxes which are imposed by the state, collected by the department of revenue and distributed by the department of revenue to political subdivisions; and [3] all other moneys which are hereafter designated as 'nonstate funds' to be administered by the department of revenue.

MAC focuses upon the second category.

MAC's point relied on asserts that 30(b) funds are nonstate revenues because the monies are revenues of local governmental entities collected by the director of revenue for distribution directly to local governmental entities. In support, MAC makes vague reference to section 30(a).2, which states that "[t]he director of revenue shall make the division and apportionment of the funds monthly in the manner required hereby."

MAC fails to develop any argument regarding what relevance section 30(a).2 might have to the funds collected under section 30(b). MAC does not provide any analysis regarding the various relevant words of the cited constitutional provisions. For example, MAC fails to provide any reason why the language of section 30(a).2, referring to "division and apportionment," relates to the word "distributed" as used in the definition of nonstate funds under section 15. The absence of argument is especially disturbing because section 30(b) describes how funds should be "distributed" but seems to use that term to distinguish it from "allocated." MAC does not even attempt to address whether the legislature intended to use the word "distributed" in section 15 in the same manner as "distributed" is used in section 30(b). More than one reasonable interpretation consistent with these terms and provisions is possible. This Court will not engage in conjecture with respect to appellants' possible arguments. *See Leahy v. Leahy,* 858 S.W.2d 221, 228 (Mo. banc 1993). MAC's claim that 30(b) funds are nonstate revenues fails.

In its second point relied on, MAC asserts:

The Circuit Court erred when it determined that Respondents properly processed the revenues under consideration under Sections 33.080 RSMo 1994 and 136.110 RSMo 1994 thereby avoiding the proper consequences of Section 15 of Article IV of the Constitution because a statute in conflict with a constitutional provision is ineffective.

MAC contends that sections 33.080 and 136.110 do not apply where the funds are "nonstate funds." MAC's contention depends necessarily upon MAC's assertion in its first point relied on that the reference in section 30(b) to section 30(a) means that 30(b) funds shall not be included in the definition of "total state revenues" as that term is used in section 17 of article X. Having held that 30(b) funds are not nonstate funds, this Court cannot find that sections 33.080 and 136.110 conflict with section 15 as applied to 30(b) funds for the fiscal years 1995 through 1997. MAC directs the Court to no other constitutional prohibition against depositing state-imposed tax revenue into the state treasury. Unless the constitution requires otherwise, the general assembly's authority to classify and direct the treatment of state-imposed taxes is plenary. *See Fust v. Attorney General,* 947 S.W.2d 424, 430 (Mo. banc 1997). MAC's contention that sections 33.080 and 136.110 conflict with section 15 must fail.

■ MAC contends in its third point relied on:

The Circuit Court erred when it determined that Section 30(a) revenues and Section 30(b) revenues are different because the wording of the two Constitutional subsections clearly identifies the monies as being the same.

Specifically, MAC asserts under this point that 30(b) funds are exempt from total state revenues because of subsection 4 of section 30(a). Subsection 4 contains an exemption from total state revenues for proceeds from fuel taxes:

Beginning on July 1, 1993, the net proceeds of fuel taxes allocated under this section [section 30(a) ] to counties and to cities, towns and villages shall not be included within the definition of 'total state revenues' in section 17 of article X of this constitution.

MAC asserts that the subsection 4 exemption applies to 30(b) funds because of the language in sections 30(b).2 and (b).3 that states "the amounts distributed shall be allocated as provided in section 30(a) of this article."

MAC develops no clear reasoning why subsection 4 should apply, and its point relied on is of no assistance. Although section 30(b) refers to section 30(a) for determination of how funds designated for counties and cities should be allocated to individual counties and cities, section 30(b) refers to subsection 1 of section 30(a), which clarifies what amounts of money should be allocated to individual counties and cities. In contrast, subsection 4 does not provide or describe any process of allocation. Subsection 4 merely addresses the exemption of the motor fuel tax from total state revenues. The exemption from

total state revenues stated in subsection 4, therefore, does not apply to 30(b) funds.[3] Section 30(b) funds are properly included in total state revenues for the purpose of Hancock Amendment refunds for the years 1995 through 1997.

■ As its final point, MAC invokes article X, sections 16 and 21 of the Missouri Constitution. Article X, section 16 prohibits the state from "shifting the tax burden to counties and other political subdivisions." Article X, section 21 prohibits the state from "reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions." MAC asserts that the state violated sections 16 and 21 by transferring revenue designated for counties and cities to the state's general revenue fund for Hancock Amendment refunds.

MAC does not have standing to enforce a claim under either section 16 or section 21. Appellants include MAC, a not-for-profit corporation, and several political subdivisions of the state. Article X, section 23 of the Missouri Constitution provides in pertinent part:

Notwithstanding other provisions of this constitution or other law, any taxpayer of the state, county, or other political subdivision shall have standing to bring suit in a circuit court of proper venue and additionally, when the state is involved, in the Missouri supreme court, to enforce the provisions of sections 16 through 22, inclusive, of this article. . . .

MAC does not allege that any of the appellants are taxpayers; under section 23, therefore, appellants do not have standing to enforce violations of either sec-

**3.** In its reply brief, MAC cites *Conservation Federation v. Hanson*, 994 S.W.2d 27 (Mo. banc 1999), apparently assuming that subsection 4 applies to section 30(b). In *Conservation Federation*, this Court held that revenues collected pursuant to article IV, section 43 are not included in total state revenues because there is no constitutional authority for that use and because the voters authorized spending of section 43 revenue contemporaneously with, and not before, the passage of the Hancock Amendment. *Id.* Section 30(b).1, in contrast, authorizes the use of section 30(b) funds for refunds and was last amended in November, 1979, a year before the Hancock Amendment, which was adopted in November, 1980. *Conservation Federation* is inapposite.

tion 16 or 21. *See Fort Zumwalt School Dist. v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995).

In conclusion, the 30(b) funds at issue, those for fiscal years 1995, 1996, and 1997, deposited into the state treasury and subject to appropriation, were a part of total state revenues and are not exempt from refunds mandated by article X, section 18 of the Missouri Constitution.

The judgment of the circuit court is affirmed.

All concur.