Mr. Henry Hungerbeeler, Director Missouri Highway and Transportation Commission 221 Bolivar Street, Ste. 400 P.O. Box 270 Jefferson City, MO 65102
Dear Mr. Hungerbeeler:
This is in response to your questions asking:
1. May the State's share of state revenues derived from highway users be used to make Hancock Amendment refunds?
2. Does the "and making refunds" provision of Section 30(a) and the "and less refunds" provision of Section 30(b)1 include Hancock Amendment refunds or are such refunds limited to the refund of taxes "collected with respect to fuel not used for propelling highway motor vehicles" as provided in Article IV, Section 30(a) of the Missouri Constitution?
3. Does subsection 4 of Section 30(a) (which exempts the net proceeds of state fuel taxes allocated to the counties and cities from the definition of "total state revenues" in Article X, Section 17) require that the net proceeds of state fuel taxes allocated to the state must be included in the definition of "total state revenues"?
Although presented as three separate questions, we interpret your request to pose a single question: whether the revenues identified in Article IV, Sections 30(a) and 30(b) of the Missouri Constitution are subject to being partially refunded as part of a refund of excess revenues pursuant to Article X, Section 18 of the Missouri Constitution?
As your request notes, certain highway revenues have been voter approved after passage of the Hancock Amendment and, therefore, are not part of "total state revenues." According to the Auditor's most recent report on the Hancock Amendment, the State excludes from total state revenues the four cents increase in the motor fuel tax approved by the voters in 1987 and the local government share of the motor fuel tax that voters excluded from total state revenues in 1992. And to the extent that Article IV, Section 30(b) includes sales tax, one cent of the state sales tax was approved by voters in 1982. Report No. 2000-18. It is our understanding that your request does not apply to these revenues, but to the other revenues identified in Article IV, Sections 30(a) and 30(b). Your request indicates that these other revenues have been (1) included within total state revenue pursuant to the Hancock Amendment; and (2) partially refunded as excess revenue under the Hancock Amendment. From your request we understand that the partial refund of highway funds has been accomplished by following the Hancock Amendment's direction to transfer the excess revenues to general revenue from which income tax refunds are appropriated.
Since the revenues of Article IV, Section 30(b) have been the subject of recent litigation, we believe it appropriate to begin there. InMissouri Association of Counties v. Wilson, 3 S.W.3d 772 (Mo.banc 1999), the court held that Section 30(b) funds distributed to counties were part of total state revenues and were not exempt from Hancock Amendment refunds. You now ask whether the State's share of Section 30(b) funds should be treated differently than the counties' share. For the reasons explained below, we conclude that the State's share should not be treated differently.
To meet the Hancock definition of total state revenues, funds must be (1) received into the state treasury; and (2) be subject to appropriation, either by the General Assembly or by operation of law.Kelly v. Hanson, 959 S.W.2d 107,111(Mo.banc 1997). Although your request does not explicitly so state, it is our understanding that the State's share of 30(b) revenues are deposited into the state treasury. MissouriAssociation of Counties, 3 S.W.3d 772; Article III, Section 36 of the Missouri Constitution, Sections 33.080 and 136.110 RSMo 1994. Further, according to subsection 1 of Section 30(b), the State's share of these funds shall "stand appropriated without legislative action." Therefore, they are appropriated by operation of law. They may also be subject to appropriation by the general assembly pursuant to Section 33.080 RSMo 1994. Missouri Association of Counties, 3 S.W.3d 772. In either case, the State's share of 30(b) funds meets the Hancock definition of total state revenue. Unless there is some specific exemption for these funds, any portion thereof that amounts to excess revenue under the Hancock Amendment is subject to being refunded.
The constitutionally mandated use of Section 30(b) funds is not such an exception. Section 30(b) predates the Hancock Amendment. It was last amended in 1979, a year before the Hancock Amendment, and thus does not have voter approval within the meaning of the Hancock Amendment. As the Supreme Court itself has noted, it is for this very reason that Section 30(b) is distinguishable from the conservation sales tax. MissouriAssociation of Counties 3 S.W.2d at 776, n. 3. The Supreme Court also noted that Section 30(b) was distinguishable because it, unlike the conservation sales tax, specifically authorized refunds. Id.
Your request suggests that the Supreme Court statements are dicta. Even if true, it cannot be easily discounted, reflecting as it does the thinking of the unanimous Supreme Court. Moreover, whether dicta or not, this statement is correct. When the Hancock Amendment was adopted in 1980, the people established a revenue limit. The Hancock Amendment provision relating to voter approval status relates to exceeding the limit. Article X, Section 16 of the Missouri Constitution. Thus, only voter approval occurring after the Hancock Amendment has any legal effect with regard to the Hancock Amendment. When the people established the revenue limit, by reference to the governor's budget message that includes highway funds, they did not exclude any existing revenue from total state revenues, whether previously voter-approved or not. As a result, Section 30(b) funds are not exempt from the provisions of the Hancock Amendment, including its requirement that any excess thereof be refunded.
The lack of voter-approved status for Section 30(b) funds means that there is no exemption from the Hancock Amendment, regardless of the meaning of the word "refunds" in Section 30(b). But we also disagree with your request's suggestion that the term "refunds" means only repayment to taxpayers for over collection of taxes as a cost of collection of the revenue. Section 30(b) lists refunds separately from "costs of collection" and must, therefore, be something distinct therefrom. We believe that generally the term "refunds" means a return of revenue as required by law, including the Constitution. Kleban v. Morris,247 S.W.2d 832 (Mo. 1952). Although Hancock was not part of the Constitution when Section 30(b) was last amended, as a subsequent amendment it modifies existing provisions of the Constitution. Edererv. Dalton, 618 S.W.2d 644 (Mo.banc 1981). Once enacted, the Hancock Amendment's requirement of refunding excess revenues became a requirement of law within the general meaning of the term "refund." Since the mandated use contained in Section 30(b) applies only to net revenue, after deductions such as refunds, the making of the Hancock refund from 30(b) funds does not violate the mandated use. In summary, Section 30(b) funds are part of total state revenues and are subject to being part of a Hancock refund.
Turning to Section 30(a) funds, for the reasons outlined above, they also meet the definition of total state revenue. Similarly, Section 30(a) also authorizes refunds. The mandated use for Section 30(a) funds applies only to net revenue, after refunds and other deductions. While the refunds language of Section 30(a) is somewhat different than Section 30(b), it does not lead to any different conclusion. Section 30(a) specifically mentions a refund of any amount collected for fuel not used for propelling motor vehicles. Section 30(a) then states that "the remaining proceeds," after further deductions, including refunds, shall be apportioned as follows. The reference to "the remaining proceeds" can only mean after making the deduction required for a refund of any amount collected not used for propelling other vehicles. But Section 30(a) then goes on to authorize further deductions, including refunds. The second reference to refunds must mean something different than the first. Again, as explained above, we think this reference to refunds simply means any other return of the revenue required by law, including the Constitution. But even if this were not the case, the passage of the Hancock Amendment in 1980 would have modified existing parts of the Constitution, including Section 30(a). Even without a specific reference to refunds in Section 30(a) the Hancock Amendment would control. Ederer,618 S.W.2d 644.
The 1992 amendment to Section 30(a) does not lead to a different conclusion. The 1992 amendment specifically excluded from total state revenues only the local share of Section 30(a) funds. Prior to this amendment, all Section 30(a) funds were included in total state revenues. The amendment approved by the voters obviously intended to change only the treatment of the local share of Section 30(a) funds. Equally as obvious is the intent that the Hancock Amendment's effect on remaining Section 30(a) funds to remain as it was. To suggest that the repeal and reenactment of Section 30(a) sub silentio excluded all Section 30(a) funds from total state revenue, not just the local share of Section 30(a) funds specifically mentioned, would amount to a fraud on the voters. The voters would have been given no indication in the ballot language that their actions would have resulted in a total exclusion of all Section 30(a) funds from total state revenue. Thus, regardless of what the repeal and reenactment of a constitutional provision with an amendment might mean in other contexts, in the present context it can only mean that only the local share of Section 30(a) funds is excluded from total state revenue. The conclusion that only the local share of Section 30(a) funds is excluded from total state revenues is consistent with general rules of statutory construction. To the extent an amended, reenacted or revised law is the same as a prior law, it is to be construed to be a continuation of such law and not as a new enactment. Section 1.120 RSMo 1994; Kelly v. Hanson, 984 S.W.2d 540, 544 (Mo.App. 1998). "Rules for the interpretation of statutes apply with equal force to the Constitution." Spradlin v. City of Fulton, 924 S.W.2d 259, 262
(Mo.banc 1996). Since the amendment to Section 30(a) changed only the treatment of the local share, the State's share remains part of total state revenues subject to all of the Hancock Amendment requirements, including a refund of any excess portion.
 CONCLUSION
Thus, State revenues identified in Article IV, Sections 30(a) and 30(b)
of the Missouri Constitution are subject to being partially refunded as part of a refund of excess revenues pursuant to the Hancock Amendment.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General